**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BRAVA CAPITAL MANAGEMENT LIMITED,<br><br>*Plaintiff*,<br><br>v.<br><br>CHAMPION FOODS, INC., DONNA K. BURING, JONATHAN BURING, CICERO SCHLEDER G. OLIVIERA, OX GRANS LTDA, HOWARD M. GUROCK, and ALBERGO, SHMARUK & KOFMAN, LLC,<br><br>*Defendants*. | Civil No.: 2:25-cv-18290 (KSH) (JRA)<br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

## I. Introduction

Brava Capital Management has sued Champion Foods after Brava's deposit of over two million dollars on a contract to buy sugar went missing, for which Brava blames Champion and others. Brava, Champion, and Champion's individual owners have stipulated to arbitration based on the arbitration agreement in their September 9, 2025 contract. (D.E. 14.) Brava seeks in this motion to compel two of the other defendants, attorney Howard Gurock and the law firm of Albergo, Shmaruk and Kofman ("ASK"), to arbitrate its claims against them on grounds they acted as Champion's agents during the transaction and benefitted from the contract. (D.E. 39.) Gurock and ASK oppose, arguing they are non-signatories to the Brava/Champion contract. For the reasons set forth below, Brava's motion is denied, and the matter is stayed pending the result of the arbitration between Brava and Champion.

## II. Background & Procedural History

The dispute arises out of Champion's alleged breach of contract. On September 9, 2025, Brava and Champion entered into a Sale and Purchase Agreement (the "Agreement") under which Champion would broker Brava's purchase of 20,000 metric tons of sugar from Raizen Mill, located in Brazil, for a total price of $9,240,000. (D.E. 23, Am. Compl. ¶ 26 & Ex. 2, Agreement, at 2.) The Agreement provided a "Step-by-Step Operational Flow": first, Brava would send Champion a 30% deposit of the total contract price; thereafter Champion would confirm receipt of the deposit; Brava would then visit the Raizen Mill to inspect the sugar; Raizen Mill would provide a receipt for the 30% deposit; if it failed to provide the receipt, Brava would be refunded; prior to shipment, Brava's inspection of the sugar would take place at Champion's warehouse or at the Mill in Brazil; and finally, that the sugar would depart Brazil within 20 business days or less and if it didn't, Brava would get its 30% deposit back. (D.E. 23 & Ex. 2, Agreement, at 3.)

The Agreement also contained an arbitration clause:

> This Agreement shall be construed and enforced in accordance with the laws of the State of New Jersey without reference to its choice of law principles. Any controversy, claim or dispute arising out directly or indirectly out of this Agreement, or any alleged breach of this Agreement, shall be resolved by means of binding arbitration before a single arbitrator in Bergen County New Jersey in accordance with the then existing Commercial Arbitration Rules of the American Arbitration Association. The prevailing party shall be awarded its costs, expenses and attorneys' fees. The Federal and/or State Courts of New Jersey shall have jurisdiction over any dispute that is not subject to Arbitration.

(*Id.* at 11.)

Donna Buring, the president of Champion, and Atilio Ranni, the CEO of Brava, signed the Agreement, and it appears they initialed each page. (*Id.* at 14; *see generally id.* at 1-23.) There were no other signatories.

On September 12, Brava wired the 30% deposit of $2,772,000 to Champion. (D.E. 23, Am. Compl. ¶ 28.) Champion confirmed receipt and emailed Brava that it sent the deposit to Raizen Mill. (*Id.* ¶¶ 28-30.) Raizen Mill never sent Brava a receipt for the money. (*See id.* ¶¶ 33, 38.) Brava's visit to inspect the sugar in Brazil was cancelled twice without explanation. (*Id.* ¶¶ 30-37.) On September 18, Champion's attorney Gurock sent Brava an email that there was a problem with "the intermediary bank." (*Id.* ¶ 32.) On September 25, Champion's president Buring emailed Brava's CEO Ranni that the deposit was being held by an intermediary bank but that the sugar would be shipped pursuant to the Agreement. (*Id.* ¶ 39.)

Over the coming weeks, Brava asked Champion for updates and, hearing nothing reassuring, on October 7 it sent a written communication to Champion terminating the Agreement and demanding return of its $2,772,000 deposit. (*Id.* ¶¶ 33, 38, 40, 43.) Gurock responded in writing that Champion was not in default and that it had found a new supplier that would be able to ship the 20,000 tons of sugar by October 13. (*Id.* ¶ 44.)

Brava maintained that the Agreement had been breached but agreed to wait until October 13 to see if the sugar would be ready for inspection. (*Id.* ¶ 45.) The evening of October 13, Ranni notified Champion that Brava "was ready to take the sugar" and that it needed all pre-inspection documents so it could inspect the sugar. (*Id.*) Champion responded that the shipment was delayed because of bad weather. (*Id.* ¶ 47.) On October 16, Brava demanded the return of its deposit. (*Id.* ¶ 49.) That evening, Buring emailed Brava that the shipment was delayed due to weather and it would arrive at port by October 17. (*Id.* ¶ 50.) The next day, Gurock emailed Brava's attorney that the sugar would get to Puerto de Santos by noon. (*Id.* ¶ 51.) Despite not believing Champion, Brava arrived at the port for inspection. (*Id.* ¶¶ 52-53.) No sugar arrived, and Brava demanded its deposit back yet again. (*Id.* ¶¶ 54-58.)

On October 20, Buring emailed Ranni that the sugar was on its way to Venezuela. (*Id.* ¶ 59.) The next day, Brava's attorney emailed Gurock demanding return of the deposit. (*Id.* ¶ 60.) Gurock responded that he was busy but that he would get back to Brava. (*Id.* ¶ 61.) To date, Brava has not been reimbursed for its deposit and has not received the sugar. (*Id.* ¶¶ 62-63.)

On December 8, 2025, Brava filed a complaint against Champion and its individual owners, asserting breach of contract (Count One), fraud (Counts Two, Three, Four, and Five), and violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.* (Count Six). (D.E. 1.) On December 24, Champion, represented by Gurock and ASK, filed a motion to compel Brava to arbitrate its claims. (D.E. 5.) The parties agreed to arbitrate (D.E. 13), and the case was stayed and administratively terminated on January 15, 2026 (D.E. 14).

On January 29, 2026, Brava filed a demand for arbitration with the American Arbitration Association ("AAA"). (D.E. 39 & Ex. 8, Demand for Arbitration.) In addition to raising claims against Champion and its individual owners, Brava raised negligent misrepresentation and fraud claims against Gurock and ASK. (D.E. 40-1, Declaration of John R. Gonzo & Ex. 2, AFA Case Information Sheet, at 3-5.) Gurock and ASK objected, arguing they did not have an obligation to arbitrate Brava's claims against them because they were not signatories to the Agreement and did not otherwise agree to submit any dispute with Brava to arbitration. (D.E. 39 & Ex. 9, 2/13/26 Gurock and ASK Letters to AAA.)

On February 25, ASK filed a separate but related action in this Court, seeking a declaration that it had no agreement with Brava to arbitrate and therefore was under no obligation to arbitrate Brava's claims. *Albergo, et al. v. Brava Capital Management Ltd.*, 26-cv-1902, D.E. 1. In response, Brava moved to amend its complaint, add ASK, Gurock, and OX

Gains Ltda as parties, and compel arbitration. (D.E. 16.) The next month, Gurock withdrew as Champion's attorney. (D.E. 18.)

The Court granted Brava's motion to amend (D.E. 22), and Brava timely filed its amended complaint, adding a negligent misrepresentation claim against Gurock and ASK. (D.E. 23, Am. Compl. ¶¶ 89-97.) The amended complaint reiterated the New Jersey Consumer Fraud Act claim against all defendants. (*Id.* ¶¶ 98-100.) Brava asserts that Gurock induced it to enter the Agreement with Champion based on a letter of attestation that he signed the year before on August 27, 2025, in which he certified that Raizen Mill allocated 200,000 metric tons of sugar to Oceanic Brazil Ltda, which was the trading company selling to Champion. (*Id.* ¶¶ 89-97 & Ex. 1, Letter of Attestation.) The amended complaint alleges that Champion did not directly contract with Oceanic Brazil Ltda; instead, it contracted with another intermediary, Astra Commodities, to buy the sugar from Oceanic Brazil and never disclosed its relationship with Astra to Brava. (*Id.* ¶ 91 & Ex. 3, Champion/Astra Agreement, at 1-3.) The complaint recites that Gurock worked as an attorney for ASK—basing this on his ASK email address noted on the letter of attestation and his use of the ASK letterhead in subsequent letters—so any negligent misrepresentation is also attributable to ASK. (*Id.* ¶ 90 & Ex. 1, Letter of Attestation; *see* D.E. 39, Mtn. to Compel, at 30-31.)

On April 7, the Court consolidated ASK's declaratory action with the present action. (D.E. 30.) Two days later, ASK moved for a preliminary injunction to halt the arbitration proceedings against it. (D.E. 32.) The Court administratively terminated that motion and stayed the proceedings while the parties appeared before Magistrate Judge Jose Almonte, who directed Brava to file its renewed motion to compel arbitration. (D.E. 33, 38.)

Brava refiled the instant motion, arguing that even though Gurock and ASK are not signatories to the Agreement, they should be compelled to arbitrate because they acted as agents for Champion and "reaped the benefits" of the Agreement. (D.E. 39, Mtn. to Compel, at 23-30.) Brava contends that Gurock was working as an attorney on behalf of ASK during the timeframe in question, such that if Gurock can be compelled to arbitrate, ASK can too. (*Id.* at 30-31.) Additionally, Brava requests limited discovery on "(1) the extent of GUROCK's involvement in the subject transaction, including the drafting of the Agreement and the arbitration provision; and (2) the relationship between GUROCK and ASK." (*Id.* at 37.)

Gurock and ASK submitted separate oppositions (D.E. 40, 41) but largely have overlapping arguments. They argue, as they did before the AAA, that they never signed the Agreement and never agreed to arbitrate with Brava (D.E. 40, ASK Opp., at 8-17; D.E. 41, Gurock Opp., at 3); that they were not agents of Champion for purposes of compelling arbitration against them (D.E. 40, ASK Opp., at 17-21; D.E. 41, Gurock Opp., at 5-8); that they have not received any direct benefit from the Agreement or enforced the Agreement to benefit them such that equitable estoppel does not compel arbitration (D.E. 40, ASK Opp., at 21-24; D.E. 41, Gurock Opp., at 8-10); that Gurock and ASK's relationship is irrelevant to resolving the motion, but that in any event Gurock worked as an independent contractor for ASK and represented Champion in transactional matters through his own law firm, the Gurock Firm (D.E. 40, ASK Opp., at 24-25 & D.E. 40-3, Declaration of Howard M. Gurock ¶¶ 3-23; D.E. 40-2 Declaration of Damian L. Albergo ("Albergo Decl.") ¶¶ 2-10); that in December 2025, Champion formally retained ASK to represent it in this litigation (D.E. 40-2, Albergo Decl. ¶¶ 2-8); and that limited discovery is not warranted because there is no factual issue as to the existence or scope of the arbitration agreement, rather, there is only the legal issue of whether

defendants as non-signatories are subject to the arbitration agreement (D.E. 41, Gurock Opp., at 10-11).

Replying to Gurock's opposition, Brava argues that attorneys generally act as agents for their clients (D.E. 44, Reply to Gurock, at 10-14); that Gurock and ASK are "closely related" to Champion such that they are its agents (*id.*); that they are "using the arbitration provision for [their] own benefit" because the provision states that arbitration will be held in New Jersey which is where they are domiciled (*id.* at 6-9); and that when Gurock and ASK moved to compel arbitration on behalf of Champion, they were also using the arbitration provision to benefit themselves (*id.* at 10). Brava's reply to ASK's opposition mainly argues that Gurock was its attorney, so if Gurock can be compelled to arbitrate, so can ASK as Gurock's "actual or apparent principal." (D.E. 45, Reply to ASK, at 8-12.)

ASK sought leave to file a sur-reply, alleging that Brava's reply brief "improperly expands both the factual record and legal theories advanced in support of its motion." (D.E. 50.) Brava opposed. (D.E. 51.) The Court does not address any new arguments potentially raised for the first time in Brava's reply brief and finds the new factual arguments immaterial. As such, the arguments presented in the sur-reply do not impact the Court's analysis, and ASK's request is denied. L. Civ. R. 7.1(d)(6); *see Liebowitz v. Richman*, 2022 WL 1200805, at *7 (D.N.J. Apr. 22, 2022) (Vazquez, J.) (denying leave to file a sur-reply for similar reasons).

## III. Standard of Review

"[T]he question [of] whether the parties have submitted a particular dispute to arbitration, *i.e., the question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) (emphasis in original) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79,

83 (2002)). A question of arbitrability exists "when a party rightfully resists arbitration on grounds that it never agreed to arbitrate at all." *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 401 (3d Cir. 2020). Here, Gurock and ASK assert that they did not sign the Agreement and therefore did not agree to the arbitration clause contained therein. As such, it cannot be said that these defendants "clearly and unmistakably" agreed to have the question of whether the arbitration agreement applies to them arbitrated. Brava's arguments to the contrary are unpersuasive.

Before compelling arbitration, courts look to whether "(1) a valid agreement to arbitrate exists, and (2) [whether] the particular dispute falls within the scope of the agreement." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 (3d Cir. 2024) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)). While the Federal Arbitration Act ("FAA") reflects a "strong federal policy in favor of the resolution of disputes through arbitration," this presumption "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Kirleis*, 560 F.3d at 160 (first quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003); and then quoting *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

"The standard by which a court must conduct this analysis can either be under Federal Rule of Civil Procedure 12(b)(6) (motion to dismiss) or Rule 56(a) (summary judgment)." *Triola v. Dolgencorp, LLC*, 2022 WL 16834579, at *2 (D.N.J. Nov. 9, 2022) (Kugler, J.) (citing *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013)). "[W]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint), . . . the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay of discovery."

*Guidotti*, 716 F.3d at 773-74 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 481-82 (E.D. Pa. 2011)); *see also Symrise, Inc. v. Kennison*, 2026 WL 575177, at *2 (3d Cir. Mar. 2, 2026).

On the other hand, Rule 56 provides the correct standard when "the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity to establish on its face that the parties agreed to arbitrate, or the opposing party has come forth with reliable evidence that is more than a naked assertion that it did not intend to be bound by the arbitration agreement." *Robert D. Mabe v. OptumRX*, 43 F.4th 307, 324-25 (3d Cir. 2022) (quoting *Guidotti*, 716 F.3d at 774). Under Rule 56, limited discovery may be warranted if a factual dispute arises, but discovery is *not* required "when no factual dispute exists as to the existence or scope of the arbitration agreement." *Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 249 (3d Cir. 2025) (emphasis added) (quoting *Young*, 119 F.4th at 319-20).

Here, Brava attaches the Agreement as an exhibit to its complaint, and the Agreement contains an arbitration clause. (D.E. 23 & Ex. 2, Agreement, at 11.) The affirmative defense of arbitrability is therefore apparent based on "documents relied upon in the complaint." *Guidotti*, 716 F.3d at 773-74 (quoting *Somerset*, 832 F. Supp. 2d at 481). However, defendants assert that they are not signatories to the Agreement and did not agree to submit to arbitration. (D.E. 40, ASK Opp., at 1-2; D.E. 41, Gurock Opp., at 3.) As such, the Court finds that Rule 56 applies because defendants have "come forth with reliable evidence . . . that [they] did not intend to be bound by the arbitration agreement." *Mabe*, 43 F.4th at 325 (quoting *Guidotti*, 716 F.3d at 774).

Under Rule 56, summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party" and material if the evidence "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party asserting that there is a genuine dispute of material fact must support that assertion by "citing to particular parts of . . . the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

## IV. Discussion

Brava's motion to compel rests on two legal issues:[1] should defendants, as non-signatories to the Agreement, be compelled to arbitration based on equitable estoppel or be compelled to arbitrate based on agency principles?

### A. Agreement to Arbitrate

A non-signatory to a contract with an arbitration agreement may be compelled to arbitrate if "'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271 (3d Cir. 2014) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009)). The Third Circuit has recognized

[1] Both Brava and defendants focus on whether equitable estoppel or agency principles apply to bind defendants to the Agreement. In so doing, neither party raises any factual disputes about the existence or validity of the arbitration agreement. The Court therefore finds that limited discovery is not required. *See Cornelius*, 133 F.4th at 249-50.

Brava alternatively requests limited discovery as to "(1) the extent of GUROCK's involvement in the subject transaction, including the drafting of the Agreement and the arbitration provision; and (2) the relationship between GUROCK and ASK." (D.E. 39, Mtn. to Compel, at 37.) However, as discussed *supra*, even assuming Gurock drafted the Agreement for Champion and was involved in its performance, Brava does not cite to any cases where a lawyer was compelled to arbitrate a contract that they drafted but did not sign, and the Court has not found any. Limited discovery, therefore, would not materially affect the question of whether Gurock could be compelled to arbitrate. And if Gurock cannot be compelled to arbitrate, Gurock's relationship with ASK (or lack thereof) is irrelevant.

numerous theories under which a signatory can bind a non-signatory to an arbitration agreement, and two are raised here—equitable estoppel and agency. *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber and Resin Intermediates S.A.S.*, 269 F.3d 187, 195 (3d Cir. 2001).

*1. Estoppel*

There are two distinct theories of equitable estoppel, the "knowingly exploits" theory and the "intertwinement" theory. *Id.* at 199-200. Brava only relies on the knowingly exploits theory. (D.E. 44, Reply to Gurock, at 6-7.) That theory allows a court to hold a non-signatory to an arbitration agreement when they "knowingly exploit[] the agreement containing the arbitration clause despite having never signed the agreement." *DuPont*, 269 F.3d at 199.

A non-signatory "exploits" or "embraces" a contract in two ways: "(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce terms of that contract or asserting claims" based on the contract. *Griswold*, 762 F.3d at 272 (quoting *Haskins v. First Am. Title Ins. Co.*, 866 F. Supp. 2d 343, 350 (D.N.J. 2012) (Schneider, J.)); *see Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010). "Generally, these cases involve non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *DuPont*, 269 F.3d at 200; *see Griswold*, 762 F.3d at 273 ("Equitable estoppel thus prevents a non-signatory from cherry-picking the provisions of a contract that it will benefit from and ignoring other provisions that don't benefit it or that it would prefer not to be governed by (such as an arbitration clause)." (internal citation and quotation marks omitted)).

Equitable estoppel applies when a non-signatory asserts claims based on the contract to benefit *himself* and then attempts to disavow that he is similarly bound by an arbitration

provision. *Griswold*, 762 F.3d at 273. That Gurock filed a motion to compel arbitration on Champion's behalf as its attorney does not mean that he sought to enforce the contract or assert claims based on the contract to benefit himself. Champion's motion to compel (D.E. 5), which he filed, argues that Champion and Brava are parties to the Agreement and bound to the arbitration provision; it does not allege that Gurock or ASK are parties to the contract or that they request arbitration themselves. This makes sense because at that point, Brava had not yet asserted any claims against either Gurock or ASK. There is no evidence that Gurock or ASK embraced the Agreement.

There is also no evidence that Gurock or ASK received any direct benefit under the Agreement. Even when a non-signatory benefits from a contract, compelling arbitration against them is not justified unless they "exploit (and thereby assume) the agreement itself." *Haskins*, 866 F. Supp. 2d at 354 (quoting *MAG Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001)). For example, in *Quanqing (Changshu) Cloth-Making Co. v. Pilgrim Worldwide Trading, Inc.*, the court found that equitable estoppel did not apply to bind defendant Pilgrim Worldwide Trading to the parties' contract even though Pilgrim benefitted from the parties' contractual relationship. 2010 WL 2674589, at *1, *3 (D.N.J. June 29, 2010) (Martini, J.). There, plaintiff Quanqing entered into a contract with a third party to facilitate the sale of men's suits to Pilgrim. *Id.* at *1. Pilgrim had a separate contract with that third party and received and paid for the suits, but the third party did not pay Quanqing. *Id.* This led Quanqing to initiate arbitration and receive an arbitration award. *Id.* Quanqing then sought to enforce the award against Pilgrim. *Id.* The court determined that because Pilgrim did not sign the Quanqing/third party contract, did not "actively [seek] direct benefits under the agreement," and did not seek "to enforce or exploit express provisions of that contract," equitable estoppel did not

apply to bind it to the contract. *Id.* at *3. The court granted Pilgrim's motion for summary judgment. *Id.* at *3-4.

Brava does not cite to any case law to persuade the Court that the New Jersey forum selection is a "direct" benefit to Gurock and ASK for purposes of equitable estoppel, it just asks the Court to assume that it is because neither Champion nor Brava are headquartered here and Gurock and ASK are. As stated above, Gurock and ASK have consistently argued in front of this Court and the AAA that they are not parties to the Agreement and they have acted consistently with those representations. As in *Quanqing*, here is no evidence that Gurock and ASK exploited or assumed the Agreement itself.

As such, Brava cannot compel arbitration against defendants based on equitable estoppel.

*2. Agency*

Non-signatories may also be compelled to arbitrate if they had an ownership interest in one of the parties to the contract, if they were intended third party beneficiaries of the contract, or if they were closely related to a signatory of the contract. *Villano v. TD Bank*, 2012 WL 3776360, at *8 (D.N.J. Aug. 29, 2012) (Wolfson, J.); *see Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (3d Cir. 1993) ("[A]rbitration agreements may be upheld against non-parties where the interests of such parties are directly related to, if not congruent with, those of a signatory."). Brava appears to base its argument on the latter of those scenarios, but generally argues that because Gurock was Champion's attorney, and attorneys are agents of their clients, that Gurock can be compelled to arbitrate on that basis. (D.E. 39, Mtn. to Compel, at 24 ("It is clear that an attorney acts as an agent for his client."); D.E. 44, Reply to Gurock, at 10-14 ("The law is clear that an attorney generally acts as an agent for his client.").)

Despite Brava's generalized statements of law about attorney-client relationships, it is not the law that an attorney client relationship always qualifies under this distinct theory of agency to bind a non-signatory attorney to an arbitration agreement that they may have drafted. Accepting Brava's argument would mean that any attorney who drafted a contract with an arbitration provision—and represented a client with respect to that transaction—could be hauled into arbitration on an agency theory. The Court therefore looks to whether there are any cases, with similar facts, that support Brava's argument.

In its motion to compel, Brava cites only two cases that involve motions to compel arbitration against an attorney or law firm: *Cambridge Management Group, LLC v. Baker*, 2013 WL 1314734 (D.N.J. 2013) (Hillman, J.) and *Carroll v. Leboeuf, Lamb, Greene & MacRae, L.L.P.*, 374 F. Supp. 2d 375 (S.D.N.Y. 2005). (D.E. 39, Mtn. to Compel, at 26-27.) Both are distinguishable.

In *Cambridge*, Judge Hillman found that an Attorney Acknowledgement signed by an attorney and that attorney's law firm (the "Wilson defendants"), was incorporated into the parties' contract, and this justified binding them to the contract's arbitration clause. 2013 WL 1314734, at *9-11. Cambridge Management Group provided Baker with a cash advance to bring a personal injury lawsuit in return for a portion of the potential recovery. *Id.* at *1. The parties memorialized this agreement by signing a litigation funding agreement. *Id.* at *1, *4. The same day, the Wilson defendants signed an Attorney Acknowledgement in which they agreed not to pay Baker any proceeds from the personal injury litigation until Cambridge Management Group was paid first. *Id.* at *4, *9.

The Attorney Acknowledgement specifically required the Wilson defendants "to distribute any proceeds of the [underlying Georgia] Litigation . . . in accordance with the terms

of *all* Agreements signed and notarized by . . . [Baker] in favor of Cambridge[.]" *Id.* at *9 (emphasis added). And by signing the Attorney Acknowledgement, the Wilson defendants expressly acknowledged receipt of the parties' contract. *Id.*

Also relevant was the expansive language of the parties' litigation funding agreement:

> (a) In the event of any disputes hereunder, Plaintiff agrees that Plaintiff's attorney shall not disburse any proceeds to Plaintiff prior to settlement or resolution of the dispute, . . .
>
> (b) Plaintiff acknowledges and agrees that any and all disputes that arise concerning the terms, conditions, interpretation or enforcement of this Agreement shall be determined through arbitration pursuant to the Rules and methods outlined by the American Arbitration Association in New Jersey, or in a Court of competent jurisdiction, at the election of CMG. Plaintiff agrees that the laws of the State of New Jersey shall control the interpretation of this Agreement.
>
> . . . .
>
> [t]he Parties here to agree that this Agreement; the Plaintiff's Agreement to Pay Proceeds contingent on Successful Settlement, Judgment or Verdict and Receipt of Proceeds and Agreement to Assign Proceeds, *the Attorney Acknowledge [sic] of Irrevocable Lien and Assignment to CMG* and Plaintiff's Irrevocable Grant of Lien, Assignment of Proceeds and Lien Payment Instructions constitute the entire agreement of the parties hereto and that all prior and contemporaneous discussions between an among the parties are merged herein.
>
> *Id.* at *9-10 (emphasis added).

Judge Hillman found that "[g]iven the interdependent nature of these documents and the language utilized in each," the Wilson defendants were on notice that the Attorney Acknowledgement they signed became part of the parties' litigation funding agreement by incorporation and "necessarily and directly related to the litigation funding transaction." *Id.* at *10-11. The court therefore explicitly found that the Wilson defendants were subject to the arbitration provision. *Id.* at *11.

Such is not the case here. Brava argues that the relevant document that Gurock signed was his August 27, 2025 letter of attestation in which he certified that Raizen Mill allocated

200,000 metric tons of sugar to Oceanic Brazil Ltda, which was the trading company selling to Champion. (D.E. 23 & Ex. 1, Letter of Attestation.) The letter of attestation does not mention any contract between Brava and Champion, nor bind Gurock to any performance. It therefore cannot be said that Gurock was put on notice that he would ultimately be subject to an arbitration clause in a contract executed two weeks later that he did not sign.

*Carroll* is similarly unhelpful. There, plaintiff sued its former lawyers, accountants, and financial advisors "to recover losses allegedly incurred as a result of plaintiffs' investment in a tax strategy involving foreign non-performing loans." *Carroll*, 374 F. Supp. 2d at 376. Plaintiffs' former lawyers moved to compel arbitration. *Id.* at 376-77. The Southern District of New York found that the intertwinement theory of equitable estoppel applied to bind plaintiffs to arbitrate their claims. *Id.* at 377-79.

Here, Brava does not allege that the intertwinement theory applies (D.E. 44, Reply to Gurock, at 6-7), likely because it has limited applicability in New Jersey. *See Hirsch v. Amper Fin. Servs., LLC*, 215 N.J. 174, 192-93 (2013) ("Stated simply, we reject intertwinement as a theory for compelling arbitration when its application is untethered to any written arbitration clause between the parties, evidence of detrimental reliance, or at a minimum an oral agreement to submit to arbitration.").

Further, the inquiry is different when non-signatory attorneys and law firms are seeking to compel arbitration as opposed to here, where they are seeking to avoid it. *Compare Barbosa v. Midland Credit Mgmt, Inc.*, 981 F.3d 82, 91-92 (1st Cir. 2020) (law firm requesting arbitration where all parties agreed that the law firm acted as Midland Funding's agent, which was a signatory to the contract, and engaged in debt collection on Midland Funding's behalf) *with Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 445-46 (3d Cir. 1999) (signatory cannot

unilaterally compel non-signatory employees to arbitrate based on the signatory's agreement with their employer). As Judge Hillman noted, a key question is whether the non-signatory to a contract was on notice that they would be bound by it. *Cambridge*, 2013 WL 1314734, at *9-11.

The Court declines to hold that because Gurock was Champion's attorney that is enough to put him on notice of Brava's intention to bind him to the Agreement. The hundreds of pages of exhibits on this motion nowhere establish that Gurock was a beneficiary of the Agreement, that he had an ownership interest in Champion, that he was an employee of Champion, or that he was involved in the performance of the Agreement more than an average attorney would be involved.

Brava cannot compel arbitration against defendants based on agency.

### B. Stay Pending Arbitration

Brava, Champion, and Champion's individual owners have stipulated to arbitration (D.E. 14), and this matter will be stayed pending that arbitration's outcome. *See Villano*, 2012 WL 3776360, at *8 (staying the case as to TD Bank while other parties arbitrated because TD Bank was not subject to the arbitration agreement).

## V. Conclusion

For the reasons set forth above, Brava's motion to compel arbitration as to Gurock and ASK is denied. As ordered in D.E. 14, this action is stayed pending the outcome of the arbitration between Brava and Champion. A separate order accompanies this opinion.

Dated: August 20, 2026

*/s/ Katharine S. Hayden*
Katharine S. Hayden, U.S.D.J.